UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HALIMATA SANFO,

                             Plaintiff,

                -v.-

AVONDALE CARE GROUP, LLC,

                             Defendant.

21 Civ. 7267 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

        Plaintiff Halimata Sanfo brings this action against Defendant Avondale

Care Group, LLC ("Avondale"), alleging violations of the Fair Labor Standards

Act (the "FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law (the

"NYLL"), N.Y. Lab. Law §§ 195, 198, 650-665, as well as a common-law claim

for unjust enrichment.  Defendant now moves to strike the Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(f), or, alternatively, to

strike ostensibly improper portions of the Amended Complaint and dismiss the

remaining allegations for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6).  For the reasons set forth in the remainder of this Opinion,

the Court finds that certain paragraphs of the Amended Complaint must be

stricken; and that Plaintiff has plausibly alleged claims under the FLSA and the

NYLL, but not for unjust enrichment.  Accordingly, Defendant's motion to

strike is granted in part and denied in part, and Defendant's motion to dismiss

is likewise granted in part and denied in part.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff is a resident of New York who worked as a live-in home health aide for Defendant, a New York limited liability company with its principal place of business in New York City, from June 2018 until June 2021.  (AC ¶¶ 2-3, 10).  Plaintiff's job responsibilities included dressing, grooming, feeding, bathing, and toileting the individuals to whom she provided care.  (*Id.* at ¶ 11). Plaintiff also spent about twenty percent of her work hours assisting patients with general household tasks, including cleaning, shopping for groceries, preparing meals, and arranging appointments.  (*Id.*).  As a home health aide, Plaintiff worked 24-hour "live-in shifts," which required her to remain in the patient's home for 24 hours to provide care and household assistance.  (*Id.* at ¶ 12).  While Plaintiff typically had an opportunity to rest during these 24-hour shifts, she was expected to remain available to the patients at all times and to provide assistance as needed.  (*Id.*).  Though Plaintiff routinely worked 24-hour "live-in shifts" in patients' homes, she maintained a residence apart from her patients' homes throughout her employment with Defendant.  (*Id.* at ¶ 21).

Plaintiff was paid for only 13 hours of each 24-hour shift, as Defendant expected her to take breaks for meals and sleep for a total of 11 hours of each

---

[1]    This Opinion draws its facts from the Amended Complaint ("Amended Complaint" or "AC" (Dkt. #14)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion.

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to strike or, in the alternative, to dismiss as "Def. Br." (Dkt. #19); to Plaintiff's opposition brief as "Pl. Opp." (Dkt. #20); and to Defendant's reply brief as "Def. Reply" (Dkt. #22).

shift.  (AC ¶ 13).  Plaintiff's rate of pay depended on the number of 24-hour live-in shifts she completed per week.  Generally, she would be paid $195 per shift for the first three shifts of the week; $285 for the fourth shift; and $292.50 for the fifth shift and any subsequent shift.  (*Id.* at ¶ 17).  Some weeks, her rate of pay was lower, which Plaintiff attributes to working in Westchester County, where the minimum wage is lower.  (*Id.* at ¶ 18).[2]

For approximately one year, from 2020 to 2021, Plaintiff was assigned to work as a live-in aide for two individuals residing together.  (AC ¶ 14).  This arrangement made it "essentially impossible" for Plaintiff to take adequate breaks.  (*Id.*).  Indeed, during this time period, Defendant is alleged to have "reaped a windfall" by billing Medicaid for home health aide services provided to two individuals while paying only one aide.  (*Id.* at ¶ 15).  Plaintiff regularly complained to Defendant's representatives "Christina" and "Darwin" that she was not receiving adequate breaks.  (*Id.* at ¶ 13).  Further, Plaintiff claims that even if she had not complained, Defendant would have been aware that she was getting inadequate breaks because she was serving two patients instead of one.  (*Id.* at ¶ 16).  Plaintiff was never able to sleep for 5 hours without interruption or 8 hours total during her shifts, and as a result, she claims she

---

[2]    Though the Amended Complaint states that Plaintiff's payment history can be determined precisely by referring to her payroll documents, "which are incorporated herein by reference," such documents were neither attached to the Amended Complaint nor filed alongside any of the briefing on this motion.  (*See* AC ¶¶ 18, 42).  The same is true of Plaintiff's paystubs, which Plaintiff also claims are incorporated by reference in the Amended Complaint but which were never provided to the Court.  (*See id.* at ¶ 23).

is entitled to compensation for 24 hours of each shift, rather than 13 hours. (*Id.* at ¶ 20).

Plaintiff alleges that (i) Defendant failed to pay sufficient minimum wages, overtime premiums, or spread-of-hours pay[3] to Plaintiff, and did not provide Plaintiff with proper paystubs reflecting her hours worked, all in violation of the NYLL (AC ¶ 27); (ii) Defendant violated the FLSA by not properly compensating Plaintiff for the overtime hours she worked (*id.* at ¶ 32); and (iii) Defendant was unjustly enriched by billing Medicaid for two patients while paying only one home health aide (*id.* at ¶¶ 34-36).

## B.    Procedural Background

Plaintiff filed the initial complaint in this action on August 30, 2021. (Dkt. #1).  On September 15, 2021, Defendant filed a letter motion for an extension of time to respond to the Complaint, which motion was granted by the Court the same day.  (Dkt. #7, 8).  On September 16, 2021, the Court referred this case to the Mediation Office for settlement purposes pursuant to Local Civil Rule 83.9.  (Dkt. #9).  On October 12, 2021, Defendant filed a letter motion for a conference regarding its intent to file a motion to dismiss Plaintiff's complaint.  (Dkt. #10).  Plaintiff responded to Defendant's letter on October 15,

---

[3]    If the length of time between the beginning and end of an employee's workday (or the employee's "spread of hours") surpasses ten hours, the NYLL requires the employer to pay the employee an additional hour's pay at the minimum wage rate.  *See Xiao Dong Fu* v. *Red Rose Nail Salon Inc.*, No. 15 Civ. 7465 (KPF), 2018 WL 1472508, at *5 (S.D.N.Y. Mar. 26, 2018); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.  This requirement only applies to employees paid at New York's minimum wage rate (aside from restaurant and all-year hotel employees, who are entitled to spread-of-hours pay regardless of pay rate).  *Xiao Dong Fu*, 2018 WL 1472508, at *5 (internal citations omitted).

2021, and expressed her willingness to file an amended complaint. (Dkt. #11). On October 18, 2021, Defendant filed a reply letter in which it requested that mediation be postponed "until and if Plaintiff files a pleading that survives a motion to dismiss." (Dkt. #12). On October 20, 2021, the Court withdrew its mediation referral order dated September 16, 2021; directed Plaintiff to amend her complaint on or before November 19, 2021; and directed Defendant to file an answer or pre-motion letter on or before December 10, 2021. (Dkt. #13).

On November 19, 2021, Plaintiff filed the Amended Complaint, alleging violations of the FLSA and the NYLL, as well as a common-law claim for unjust enrichment. (Dkt. #14).[4] On December 10, 2021, Defendant filed a pre-motion letter renewing its request for a conference regarding its anticipated motion to dismiss (Dkt. #15), to which Plaintiff responded on December 15, 2021 (Dkt. #16). On December 20, 2021, the Court dispensed with its requirement of a pre-motion conference and set a briefing schedule for Defendant's motion to dismiss. (Dkt. #17). Defendant filed its motion to dismiss and supporting memorandum of law on January 28, 2022. (Dkt. #18-19). Plaintiff filed her opposition brief on February 25, 2022. (Dkt. #20). On March 11, 2022,

---

[4]     Within her claim for unjust enrichment, Plaintiff alludes to two other statutes, stating that "to the extent that Defendant failed to make minimum payments to Plaintiff as required by New York Home Care Worker Parity Act and/or Fair Wages for New Yorkers Act, Defendant should be required to make up the difference." (AC ¶ 36). The Court understands Plaintiff to be referring to the New York Home Care Worker Wage Parity Law, N.Y. Pub. Health Law § 3614-c; and the New York City Fair Wages for New Yorkers Act, N.Y.C. Admin. Code § 6-134. This sentence is the only reference to either statute in the Amended Complaint, and Plaintiff makes no specific allegations that Defendant violated either statute. Further, Plaintiff makes no reference to either statute in her four-page opposition brief. Accordingly, the Court will not treat either of these passing references as a standalone cause of action.

Defendant filed its reply brief and a letter requesting oral argument. (Dkt. #22, 23). On March 14, 2022, the Court notified the parties that it would promptly advise them if it believed oral argument would be useful in resolving the motion. (Dkt. #24). Accordingly, Defendant's motion is fully briefed and ripe for the Court's consideration.

## DISCUSSION

### A.   The Court Grants in Part Defendant's Motion to Strike Under Federal Rule of Civil Procedure 12(f)

#### 1.   Applicable Law

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although a motion to strike should be brought "within 20 days after being served with the pleading," a court, in its discretion, may consider what would otherwise be untimely motions. *IMG Fragrance Brands, LLC* v. *Houbigant, Inc.*, No. 09 Civ. 3655 (LAP), 2009 WL 5088750, at *1 (S.D.N.Y. Dec. 18, 2009) (quoting Fed. R. Civ. P. 12(f)(2)); *see also Emmpresa Cubana Del Tabaco* v. *Culbro Corp.*, 213 F.R.D. 151, 155 n.2 (S.D.N.Y. 2003) ("[T]he Court's discretion renders the twenty-day rule 'essentially unimportant,' as the Court has the authority to hear a motion to strike at any time after the twenty-day period." (internal citation omitted)); *but see Feitshans* v. *Kahn*, No. 06 Civ. 2125 (SAS), 2007 WL 998400, at *2 (S.D.N.Y. Apr. 2, 2007) (denying motion to strike as untimely); *Riddle* v. *Claiborne*, No. 00 Civ. 1374 (MBM), 2001 WL 1352456, at *1 (S.D.N.Y. Nov. 2, 2001) (same).

"Motions to strike are not to be granted 'unless there is a strong reason for so doing.'" *Dan-Bunkering (Am.), Inc.* v. *Tecnologias Relacionadas Con Energia y Servicios Especializados, S.A. de C.V.*, No. 17 Civ. 9873 (KPF), 2019 WL 1877344, at *3 (S.D.N.Y. Apr. 26, 2019) (quoting *Nungesser* v. *Columbia Univ.*, No. 15 Civ. 3216 (GHW), 2017 WL 1102661, at *1 (S.D.N.Y. Mar. 23, 2017) (internal quotation marks omitted)).  Courts in this District have found that to prevail on a motion under Rule 12(f), the moving party must show "[i] [that] no evidence in support of the allegations would be admissible; [ii] that the allegations have no bearing on the issues in the case; and [iii] that to permit the allegations to stand would result in prejudice to the movant."  *Id.* (quoting *Landesbank Baden-Württemberg* v. *RBS Holdings USA, Inc.*, 14 F. Supp. 3d 488, 497 (S.D.N.Y. 2014) (internal quotation marks and citation omitted)); *accord Snellinger* v. *Fed. Nat'l Mortg. Ass'n*, No. 19 Civ. 6574 (NSR), 2022 WL 1711696, at *2 (S.D.N.Y. May 27, 2022).  "Courts have found allegations to be prejudicial when they are 'amorphous, unspecific and cannot be defended against' and where the allegations, if publicized, 'harm [the defendant] in the public eye and could influence prospective jury members.'" *Low* v. *Robb*, No. 11 Civ. 2321 (JPO), 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012) (quoting *G-I Holdings, Inc.* v. *Baron & Budd*, 238 F. Supp. 2d 521, 556 (S.D.N.Y. 2002)); *see also Morse* v. *Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (striking references to defendant's prior criminal conviction and his income level because neither fact "bears remotely on the merits of th[e] case," and including them "serves no purpose except to inflame the reader").

2.    **Analysis**

Defendant moves to strike the entirety of the Amended Complaint on the bases that (i) it is replete with improper legal arguments, in violation of Federal Rule of Civil Procedure 8(a)'s requirement that a pleading contain "a short and plain statement showing that the pleader is entitled to relief"; and (ii) its repeated references to another case filed against Defendant in this District, *Rodriguez* v. *Avondale Care Group LLC*, No. 16 Civ. 3084 (SN), 2018 WL 1582433 (S.D.N.Y. Mar. 27, 2018), are improper and prejudicial to Defendant. (Def. Br. 6-8).  Plaintiff responds that in wage and hour cases, "the line between legal and factual issues can be very blurry," and that Plaintiff should not be faulted or penalized for pleading cautiously.  (Pl. Opp. 2).

The Court first addresses Defendant's argument that the Amended Complaint contains improper legal arguments.  While the Amended Complaint is ten pages long, Plaintiff devotes only four pages to factual allegations and two pages to delineating her claims against Defendant.  (AC ¶¶ 7-23).  The remaining pages are devoted to an odd string of paragraphs styled in question-and-answer format, entitled "Anticipated Objections."  (*Id.* at ¶¶ 37-45).  This section of the Amended Complaint is — as its title suggests — a list of anticipated questions and legal objections to the Amended Complaint, alongside Plaintiff's response to each.  Defendant describes this section as "consist[ing] entirely of setting up strawman legal objections that Plaintiff anticipates [Defendant] will make on a motion to dismiss, and then arguing against the viability of the same."  (Def. Br. 4).  There are nine total objections,

and an understanding of their content is necessary to evaluating Defendant's motion to strike this section of the Amended Complaint.

*First*, Plaintiff anticipates that Defendant will object that the Amended Complaint fails to identify a specific week in which Plaintiff worked overtime. (AC ¶ 38).  Plaintiff writes that this objection is incorrect because Paragraph 18 incorporates Plaintiff's payroll documents by reference; and that in any event,

> [Plaintiff] hereby alleges that during the week ending April 4, 2020[,] she worked 7 full day shifts[,] and that for the reasons stated above[,] she worked 24 compensable hours each shift.  Therefore, her total working hours for that week were 168 which is made up of 40 regular hours and 128 overtime hours.  She was paid for only 51 of those overtime hours. Therefore Ms. Sanfo worked 77 overtime hours that week for which she was not paid any wages at all, let alone overtime premiums.

(*Id.*).

*Second*, Plaintiff anticipates that Defendant will object that "[t]he response to the previous question is totally conclusory.  What is the basis for alleging that Plaintiff was compensated for 51 overtime hours and not 148 during the week [which] ended April 4, 2020?"  (AC ¶ 39).  Responding to her own question, Plaintiff explains how she determined her "regular rate of pay." (*Id.*).  As an example, Plaintiff states that on March 29, 2020, she was paid $195, which represents a 13-hour shift multiplied by the New York minimum wage of $15 per hour.  (*Id.*).  Plaintiff suggests that if the $195 were intended to compensate her for the full 24 hours she worked that day, then her regular rate of pay is actually $8.12 per hour.  (*Id.*).  Accordingly, Plaintiff concludes, it

is reasonable to infer at this stage that her regular rate of pay fell below New York's minimum wage.  (*Id.*).

*Third*, Plaintiff raises the question, "What is the basis for alleging that [Plaintiff]'s pay for a shift compensated her for only 13 hours?"  (AC ¶ 40).  Plaintiff responds, in essence, that she divided her total pay for a shift, $195, by New York State's hourly minimum wage, $15, which equals 13.  (*Id.*).[5]

*Fourth*, Plaintiff anticipates that Defendant will object that the Amended Complaint "does not adequately allege that Defendant failed to pay overtime premiums to Plaintiff for a specific week."  (AC ¶ 41).  In response to this anticipated objection, Plaintiff writes, "Plaintiff hereby alleges that during the week [that] ended April 4, 2020, she worked 77 overtime hours for which she received no compensation at all, not 'straight' time and not overtime premiums."  (*Id.*).  Plaintiff adds that she was properly compensated for 40 regular hours and 51 overtime hours that week.  (*Id.*).

*Fifth*, Plaintiff anticipates that Defendant will object that "Plaintiff has provided specific details as to only one week.  The Complaint should do so for all weeks."  (AC ¶ 42).  Plaintiff responds that providing this information is difficult without full payroll records, but that the calculation is nevertheless straightforward:  Plaintiff's allegation is that for each shift she worked, she was

---

[5]    Plaintiff adds, "In any event, the Court's opinion in the *Delfina Rodriguez* case clearly states that Ms. Rodriguez was paid for only 13 hours when she worked a 24 hour shift. [] Plaintiff here is making essentially identical allegations to those made by Ms. Rodriguez against the exact same employer. It follows, *a fortiori*, that Plaintiff's allegations here are plausible for the exact same reasons."  (AC ¶ 40).  Plaintiff's discussion of the *Rodriguez* case is addressed in detail *infra*.

properly compensated for 13 hours of work and not compensated at all for 11 hours of work.  (*Id.*).  Plaintiff states that she is "happy to produce a detailed chart showing the exact number of unpaid straight hours and overtime hours for each week once the Defendant makes a full production of payroll records." (*Id.*).

*Sixth*, Plaintiff anticipates that Defendant will object that the Amended Complaint "does not specify which notifications under the Wage Theft Prevention Act were [d]eficient and [w]hen [they] [w]ere [p]rovided."  (AC ¶ 43). She responds by stating that every one of Plaintiff's paystubs was deficient, because they failed to accurately report her hours of work.  (*Id.*).  Further, "in order to avoid any dispute as to specificity," Plaintiff adds that for the week that ended February 2, 2019, her paystub reported a single hour of work, even though she worked a full shift.  (*Id.*).

*Seventh*, Plaintiff anticipates that Defendant will object that the Amended Complaint "does not plausibly allege that Defendant knew or should have known about Plaintiff's hours of work."  (AC ¶ 44).  In response, Plaintiff alleges that during the course of her employment, she complained regularly about the situation to her supervisors, identified only as Christina and Darwin.  (*Id.*).

*Eighth*, Plaintiff anticipates that Defendant will object that the Amended Complaint "does not state a claim for spread of hours since Plaintiff might have

been paid more than the minimum wage in some weeks."  (AC 9, ¶ 45).[6]
Plaintiff responds that she was paid at the minimum wage rate for most of the
weeks in which she worked for the Defendant.  (*Id.*).  As one specific example,
Plaintiff states that in the week which ended May 2, 2021, she was paid $13.00
per hour and worked numerous 24-hour shifts without any spread-of-hours
payments.  (*Id.*).  At that time, the minimum wage in Westchester was $13.00
per hour, and in New York City it was $15.00.  (*Id.*).  Since Plaintiff worked only
in Westchester and New York City for the Defendant, she was paid either the
minimum wage or less that week.  (*Id.*).

     *Ninth* and finally, Plaintiff raises the general objection, "[t]he Complaint
has some other [d]eficiency."  (AC 10, ¶ 45 (italicization omitted)).  She
responds to this objection, "To the extent that anything important is missing,
Plaintiff alleges that her allegations are substantially similar to those of Delfina
Rodriguez and also seeks leave to further amend."  (*Id.*).

     Defendant describes this "Anticipated Objections" section as "brief-style
legal argument" that is "improper."  (Def. Br. 8).  What is more, Defendant
argues that it would be "entirely unfair" and "prejudicial" to allow this material
to remain in the Amended Complaint, because Defendant "would be compelled
to weed through the verbiage and respond to the materials contained therein or
risk having the material deemed admitted."  (*Id.* (citing *Barrett* v. *City of*

---

[6]     There are two paragraphs numbered Paragraph 45 in the Amended Complaint.  One
appears on page 9, and the other appears on page 10.  Citations to each include a page
number.

*Allentown*, 152 F.R.D. 50, 53 (E.D. Pa. 1993))).  Federal Rule of Civil Procedure 8(a) requires a party's pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Some courts have concluded that "the inclusion of legal arguments in a pleading violates Rule 8(a)'s 'short and plain statement' requirement."  *Equal Emp. Opportunity Comm'n* v. *Green Lantern Inn, Inc.*, No. 19 Civ. 6704 (FPG) (MJP), 2021 WL 4086148, at *5 (W.D.N.Y. Aug. 19, 2021), *report and recommendation adopted*, No. 19 Civ. 6704 (FPG), 2021 WL 4081109 (W.D.N.Y. Sept. 8, 2021); *accord In re NC Swine Farm Nuisance Litig.*, No. 5:15 Civ. 13 (BR), 2015 WL 3948309, at *3 (E.D.N.C. June 29, 2015) (citing cases).  "When a complaint fails to comply with [the Rule 8] requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial."  *Shak* v. *Krum*, No. 18 Civ. 1650 (LGS), 2018 WL 5831319, at *6 (S.D.N.Y. Nov. 6, 2018) (quoting *Simmons* v. *Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  That said, dismissal "'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'"  *Id.* (quoting *Simmons*, 49 F.3d at 86).  Generally, a court's remedy for failure to comply with Rule 8 is to grant the plaintiff leave to amend.  *Simmons*, 49 F.3d at 86-87.[7]

---

[7]    This is especially true "when the complaint states a claim that is on its face nonfrivolous."  *Simmons* v. *Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995).  Here, Plaintiff has stated multiple nonfrivolous claims, which are discussed *infra*.

The Court disagrees with Defendant that Plaintiff's "Anticipated Objections" section contains "brief-style legal argument[s]." Instead, this section of the Amended Complaint chiefly comprises factual allegations that Plaintiff could have included in the Amended Complaint's "Background" section. Instead of pleading all of the facts together, Plaintiff made the peculiar decision to plead, at least initially, in an arguably inadequate manner; raise objections to that inadequacy; then swat down those objections by pleading additional facts. Nevertheless, the mere fact that Plaintiff has chosen to include some of her most crucial factual allegations in an odd question-and-answer format at the end of the Amended Complaint does not transform those allegations into improper legal arguments. Defendant certainly has not demonstrated that (i) no evidence in support of these allegations would be admissible, (ii) these allegations have no bearing on the issues in this case, or (iii) permitting these allegations to stand would result in prejudice to Defendant. *See Dan-Bunkering (Am.), Inc.*, 2019 WL 1877344, at *3; *see also Johnston* v. *City of Syracuse*, No. 5:20 Civ. 1497 (DNH), 2021 WL 3930703, at *9 (N.D.N.Y. Sept. 2, 2021) ("Rule 12(f) … requires at least that the struck matter be 'redundant, immaterial, impertinent, or scandalous.' Plaintiff's anticipatory legal arguments are none of these things. They are at least related to the case, even if they are beyond the scope of what should be contained in a pleading." (citing Fed. R. Civ. P. 12(f))). Accordingly, the Court denies Defendant's motion to strike the "Anticipated Objections" section of the Amended Complaint.

14

In addition to challenging Plaintiff's "Anticipated Objections" as improper legal arguments, Defendant challenges Plaintiff's repeated citations to *Rodriguez*, a case brought against Defendant in this District in 2016.  First, Plaintiff states that the allegations in her Amended Complaint are "nearly identical to the allegations of the [p]laintiff in [*Rodriguez*]."  She adds,

> In [*Rodriguez*], the Defendant made a motion for summary judgment which the Court denied by Opinion and Order dated March 27, 2018 (the "Rodriguez Opinion").  Accordingly, this Amended Complaint is being structured to track the structure of the Rodriguez Opinion.  If the facts as presented in *Rodriguez* were sufficient to defeat a motion for summary judgment, it follows, *a fortiori*, that if Plaintiff alleges similar facts[,] then she has stated a plausible claim.

(AC ¶¶ 8-9 (internal citation omitted)).[8]

"It is well settled under Second Circuit law that allegations in a complaint 'that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of [Rule] 12(f).'"  *Low*, 2012 WL 173472, at *9 (quoting *RSM Prod. Corp.* v. *Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) (striking paragraphs based on "complaints filed in actions that were never resolved on the merits and, thus, did not result in any findings of law or fact"));

---

[8]      Plaintiff claims that Defendant's motion for summary judgment in *Rodriguez* was "denied."  (AC ¶ 8).  In fact, the Opinion and Order to which Plaintiff refers resolved cross-motions for summary judgment, each of which was granted in part and denied in part.  *See Rodriguez* v. *Avondale Care Group LLC*, No. 16 Civ. 3084 (SN), 2018 WL 1582433, at *10 (S.D.N.Y. Mar. 27, 2018).  The parties in *Rodriguez* ultimately settled their case.  Magistrate Judge Sarah Netburn approved the parties' proposed settlement and dismissed the case with prejudice on August 27, 2018.  *Rodriguez*, No. 16 Civ. 3084 (SN), Dkt. #88.

*see also Footbridge Ltd.* v. *Countrywide Home Loans, Inc.*, No. 09 Civ. 4050 (PKC), 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010) (striking paragraphs in complaint that were "based on pleadings and settlements in other cases"); *Cowell* v. *Utopia Home Care, Inc.*, 144 F. Supp. 3d 398, 406 (E.D.N.Y. 2015) (in FLSA case, striking complaint's references to other litigation against employer, and describing the material as immaterial, impertinent, and inappropriate in a complaint). Accordingly, "references to unrelated disputes and lawsuits involving [Defendant] must be stricken from the Complaint." *Low*, 2012 WL 173472, at *9.

Specifically, the Court grants Defendant's motion to strike the following paragraphs or portions of paragraphs from the Amended Complaint:

- Paragraph 8, in full;

- Paragraph 9, in full;

- Paragraph 11, only the clause, "were substantially similar to those of Delfina Rodriguez";

- Paragraph 30, the final sentence ("Indeed, the Court's opinion in the *Delfina Rodriguez* case discusses this electronic system which discussion is incorporated here by reference.");

- Paragraph 40, the final three sentences ("In any event, the Court's opinion in the *Delfina Rodriguez* case clearly states that Ms. Rodriguez was paid for only 13 hours when she worked a 24 hour shift[.] Plaintiff here is making essentially identical allegations to those made by Ms. Rodriguez against the exact same employer. It follows, *a fortiori*, that Plaintiff's allegations here are plausible for the exact same reasons."); and

- Paragraph 45, only the clause, "alleges that her allegations are substantially similar to those of Delfina Rodriguez and[.]"

16

With the exception of these six paragraphs or portions of paragraphs, the Court

denies Defendant's motion to strike the Amended Complaint.

**B.     The Court Grants in Part Defendant's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

**1.     Applicable Law**

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure

to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).

When considering a motion to dismiss under Rule 12(b)(6), a court should

"draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded

factual allegations to be true, and determine whether they plausibly give rise to

an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir.

2011) (internal quotation marks and citation omitted).  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570

(2007)).  While the plausibility requirement "is not akin to a 'probability

requirement,' ... it asks for more than a sheer possibility that a defendant has

acted unlawfully."  *Id.*  Toward that end, a plaintiff must provide more than "an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Moreover,

"[w]here a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

2.    **The Court Denies Defendant's Motion to Dismiss Plaintiff's FLSA Claim**

Plaintiff alleges that Defendant violated the FLSA by not properly compensating Plaintiff for the overtime hours she worked.  (AC ¶ 32). Defendant argues that Plaintiff's allegations are "threadbare" and "conclusory," requiring the Court to assume that every shift Plaintiff worked was a 24-hour, live-in shift, and that she never once received a sleep or meal break in the entirety of her tenure as an employee of Defendant.  (Def. Br. 13-14). Defendant further contends that while Plaintiff seeks to support her conclusions through "incorporation by reference" of her paystubs, those paystubs were not appended to the Amended Complaint, and Defendant cannot respond to such "[ph]antom material" without speculation.  (*Id.* at 14). Plaintiff responds that she has alleged in detail that she was denied the required break time, and that it "is difficult to see what more needs to be alleged."  (Pl. Opp. 3 (citing AC ¶¶ 13-19)).

The parties do not dispute that Plaintiff's employment was covered by the FLSA, or that Defendant qualifies as Plaintiff's "employer" within the meaning of the FLSA.  The FLSA requires that an employer pay its employees for all hours worked in excess of 40 hours per week "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1). "A plausible FLSA overtime claim 'must provide sufficient detail about the length and frequency of [an employee's] unpaid work to support a reasonable inference that [she] worked more than forty hours in a given week.'"  *Granda* v.

18

*Trujillo*, No. 18 Civ. 3949 (PAE), 2019 WL 367983, at *7 (S.D.N.Y. Jan. 30, 2019) (quoting *Nakahata* v. *N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013)); *see also Lundy* v. *Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ("[A] plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.").

Defendant first cites *Lundy* for its holding that a plausible FLSA claim requires Plaintiff to allege at least "a single workweek in which [she] worked at least 40 hours and also worked uncompensated time in excess of 40 hours." (Def. Br. 10-11 (quoting *Lundy*, 711 F.3d at 114)).  The Amended Complaint clearly does so, albeit within the "Anticipated Objections" section that Defendant believes must be stricken from the Amended Complaint.  (*See* AC ¶ 38 (identifying the week ending on April 4, 2020, as a week in which Plaintiff worked 168 hours, including 128 overtime hours, and was paid for only 51 overtime hours); Def. Br. 6-8 (moving to strike the "Anticipated Objections" portion of the AC)).  The Court must accept this allegation as true at the motion to dismiss stage.

Next, Defendant cites *Nakahata* in support of its proposition that "[a]t a minimum, [a complaint alleging a FLSA violation] must set forth the approximate number of unpaid regular and overtime hours allegedly worked." (Def. Br. 12 (quoting *Nakahata*, 723 F.3d at 201 n.10)).  However, this is a misstatement of the applicable legal standard.  In *Nakahata*, the Second Circuit noted that while the district court had required the complaint to "set

19

forth the approximate number of unpaid regular and overtime," this standard is in fact "more demanding than that employed in *Lundy*," which requires merely that a plaintiff "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Nakahata*, 723 F.3d at 201 n.10 (quoting *Nakahata* v. *N.Y.-Presbyterian Healthcare Sys., Inc.*, No. 10 Civ. 2661 (PAC), 2011 WL 321186, at *4 (S.D.N.Y. Jan. 28, 2011), *aff'd in part, vacated in part, remanded*, 723 F.3d 192 (2d Cir. 2013); *Lundy*, 711 F.3d at 114).  The Second Circuit added that "the standard we reaffirm today does *not* require an approximate number of overtime hours," then quoted *Lundy* in support of the proposition that "[u]nder a case specific approach, some courts *may* find that an approximation of overtime hours worked may help draw a plaintiff's claim closer to plausibility." *Id.* (emphasis added) (internal citations omitted).

The Court finds that Plaintiff has satisfied the *Lundy* standard.  In other words, the Amended Complaint plausibly alleges that Plaintiff worked 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours, which is all that is required to allege a FLSA violation. Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's overtime claims.

### 3.  The Court Denies Defendant's Motion to Dismiss Plaintiff's NYLL Claim

Plaintiff alleges that Defendant violated the NYLL by failing to pay overtime premiums, sufficient minimum wage, or spread-of-hours pay to

Plaintiff; and by failing to provide Plaintiff with proper paystubs reflecting her hours worked.  (AC ¶ 27).  Defendant argues that Plaintiff's claim for unpaid overtime under the NYLL fails for the same reasons as her claim under the FLSA, and that Plaintiff has failed to set forth "any allegations regarding hours that she actually worked with any level of specificity whatsoever" in support of her remaining NYLL claims.  (Def. Br. 17).

To begin, Defendant argues that Plaintiff's claim for unpaid overtime under the NYLL fails for the same reasons as her claim under the FLSA.  (Def. Br. 17).  The Court agrees as to the standard, but disagrees as to the analysis of the pleadings under that standard.  That is, the Court agrees with Defendant that the same standard applies to claims for unpaid overtime under the FLSA and the NYLL.  *See* N.Y. Lab. Law § 663; *Lundy*, 711 F.3d at 118 (agreeing that "the same standard applie[s] to FLSA and NYLL claims").  However, for the same reasons it denied Defendant's motion to dismiss Plaintiff's overtime claims under the FLSA, the Court denies Defendant's motion to dismiss Plaintiff's analogous claim under the NYLL.

Next, as to Plaintiff's claims for spread-of-hours pay and unpaid minimum wages, Defendant argues that Plaintiff has failed to set forth "any allegations regarding hours that she actually worked with any level of specificity whatsoever."  (Def. Br. 17).  The Court disagrees and finds that Plaintiff has plausibly alleged that she worked 24 hours per day for each of her live-in shifts.  Contrary to Defendant's assertions, Plaintiff supports her allegations with facts that make it plausible that she worked for 24 hours a day

21

during her live-in shifts.  She asserts that she was confined to her work location and was expected to remain available to the patients for the entirety of the time she was on her shift, even when she was resting or otherwise on break.  (AC ¶ 12).  *See Hobbs* v. *Knight-Swift Transp. Holdings, Inc.*, No. 21 Civ. 1421 (AT), 2022 WL 118256, at *4 (S.D.N.Y. Jan. 12, 2022) (finding that plaintiff truck drivers plausibly alleged they worked 24 hours per day, where plaintiffs asserted that they were confined to their work location, responsible for monitoring the security of their loads, and performing various duties for defendants for the entirety of the time they were on their routes, even when they were in their sleeper-berths).  With respect to spread-of-hours pay specifically, Plaintiff alleges that in the week that ended May 2, 2021, she was paid only $13.00 per hour despite working numerous 24-hour shifts without any spread-of-hours payments.  (AC ¶ 45).  With respect to Defendant's alleged nonpayment of minimum wages, Plaintiff alleges that on March 29, 2020, she was paid $195 for a 24-hour shift, which works out to $8.12 per hour — well below New York State's $15 minimum wage.  While Plaintiff's allegations surely could have benefited from the presence of supporting documents such as Plaintiff's paystubs, the Court finds that she has cleared the bar necessary to state claims for spread-of-hours pay and unpaid minimum wages under the NYLL.

Finally, as to Plaintiff's claim that Defendant failed to provide her with proper paystubs reflecting her hours worked, the NYLL requires employers to "furnish each employee with a statement with every payment of wages[.]"  N.Y.

Lab. Law § 195(3).  That statement must include "the dates of work covered by that payment of wages; ... rate or rates of pay and basis thereof ...; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."  *Id.*  Plaintiff alleges that the paystubs provided to her by Defendant did not comply with the NYLL in that they did not set forth (i) the number of hours worked by Plaintiff or (ii) the benefit portion of the New York home health aide minimum rates applicable.  (AC ¶ 23).  Defendant does not specifically address this claim in its motion to dismiss.  The Court is required to take the well-pleaded allegations of the Amended Complaint as true for purposes of this Opinion.  Because Defendant did not specifically address Plaintiff's allegations that her paystubs were legally deficient, and because neither party has filed any paystubs or other documentation that invalidate Plaintiff's well-pleaded allegations, the Court will not *sua sponte* dismiss this claim.

### 4. The Court Grants Defendant's Motion to Dismiss Plaintiff's Unjust Enrichment Claim

Plaintiff alleges that Defendant was unjustly enriched by billing Medicaid for two patients while paying only one home health aide and, moreover, to the extent Defendant failed to make minimum payments to Plaintiff as required by the New York Home Care Worker Parity Act or Fair Wages for New Yorkers Act, Defendant should be required to make up the difference.  (AC ¶¶ 34-36).  Defendant argues that this claim must be dismissed because Plaintiff has failed to allege that Defendant received something of value that belongs to

Plaintiff.  (Def. Br. 17-18 (quoting *Bazak Int'l Corp.* v. *Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004))).  On this point, Defendant is correct.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish [i] that the defendant benefitted; [ii] at the plaintiff's expense; and [iii] that equity and good conscience require restitution." *Beth Israel Med. Ctr.* v. *Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citing *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).  "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement.*" *Id.* at 586-87 (emphasis in original) (citing *Goldman* v. *Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)).  "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Id.* at 587 (quoting *Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*, 70 N.Y.2d 382, 388, (1987)).  "A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." *Id.* (quoting *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 388).

In their briefing on Plaintiff's unjust enrichment claim, neither party addresses the existence of an employment contract between the parties that governs the instant dispute.  It is at least possible that Plaintiff's employment contract addresses the care of multiple patients in the same home, which would preclude her from seeking quasi-contractual relief on the same subject matter.  However, even absent such an agreement, the Court can readily

dispose of Plaintiff's claims of unjust enrichment.  "[T]he law is clear that a plaintiff may not allege that his former employer was 'unjustly' enriched at his expense when the employer compensated the plaintiff by paying him a salary." *Barker* v. *Bancorp, Inc.*, No. 21 Civ. 869 (KPF), 2022 WL 595954, at *13 (S.D.N.Y. Feb. 25, 2022) (quoting *Levion* v. *Societe Generale*, 822 F. Supp. 2d 390, 405 (S.D.N.Y. 2011) (citation omitted), *aff'd*, 503 F. App'x 62 (2d Cir. 2012) (summary order)); *see also Karmilowicz* v. *Hartford Fin. Servs. Grp.*, No. 11 Civ. 539 (CM) (DCF), 2011 WL 2936013, at *12 (S.D.N.Y. July 14, 2011) (finding that incentive compensation was designed to reward exceptional employees by supplementing their salaries, and therefore that employee's unjust enrichment claim failed), *aff'd sub nom. Karmilowicz* v. *Hartford Fin. Servs. Gr., Inc.*, 494 F. App'x 153 (2d Cir. 2012) (summary order).

## CONCLUSION

For the foregoing reasons, Defendant's motion to strike is GRANTED IN PART and DENIED IN PART. The Court strikes only the paragraphs and portions of paragraphs delineated on pages 16 and 17 of this Opinion and Order. Further, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. The Court denies Defendant's motion to dismiss Plaintiff's claims under the FLSA and the NYLL, but grants Defendant's motion to dismiss Plaintiff's unjust enrichment claim.

The Clerk of Court is directed to terminate the motion pending at docket number 18. Plaintiff is directed to file a second amended complaint in compliance with the directives set forth in this Opinion and Order on or before **September 7, 2022**.

SO ORDERED.

Dated:      August 17, 2022
            New York, New York

_____
          KATHERINE POLK FAILLA
          United States District Judge